**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANTHONY NWAJEI, *on behalf of himself*
*and others similarly situated*,

                               *Plaintiff*,

                    -against-

E&E OF FIVE TOWNS, INC. d/b/a
Barbacoa Burger House, EDUARD
SHAULOV a/k/a Eddie Shaulov, and
EDDIE DOE,

                             *Defendants*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPORT AND**
**RECOMMENDATION**
23-CV-5541 (JMA) (JMW)

**A P P E A R A N C E S:**

Aaron Schweitzer, Esq.
Tiffany Troy, Esq.
John Troy, Esq.
**Troy Law, PLLC**
41-25 Kissena Boulevard, Suite 110
Flushing, NY 11355
*Attorneys for Plaintiff*

Eli Z. Freedberg, Esq.
**Littler Mendelson, P.C.**
900 Third Avenue
New York, NY 10022
*Attorneys for Defendants*

**WICKS**, Magistrate Judge:

      Plaintiff Anthony Nwajei ("Plaintiff") commenced this action against E&E of Five

Towns, Inc., d/b/a Barbacoa Burger House ("Five Towns") and its owners and operators Eduard

"Eddie" Shaulov ("Shaulov") and Eddie Doe (collectively, "Defendants") on July 21, 2023,

alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law

("NYLL") on behalf of himself and other similarly situated former employees of Defendants.

(ECF No. 1.) Following an unsuccessful mediation, Defendants moved to dismiss all claims asserted against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* Electronic Order dated January 11, 2024; ECF No. 23.) Now before the Court, on referral from the Honorable Joan M. Azrack, is Defendants' Motion to Dismiss. (*See* Electronic Order dated April 17, 2024; ECF No. 23.) For the reasons set forth below, the undersigned respectfully recommends that Defendants' Motion (ECF No. 23) be **GRANTED**.

## BACKGROUND

### I.    Factual Background

The following are allegations drawn from Plaintiff's Complaint and documents integral to it, and are assumed true for the purposes of the Motion to Dismiss. *See generally* ECF No. 1. Plaintiff was employed by Defendants from August 1, 2022 through June 28, 2023 as a server at Defendants' kosher burger restaurant, Barbacoa Burger House, located in Cedarhurst, New York (hereafter, the "Restaurant"). (*Id*. at ¶ 7-8.) Defendant Shaulov is part-owner, majority shareholder and active manager of the Restaurant, and Defendant Eddie Doe is a part-owner, minority shareholder, and active manager of the Restaurant. (*Id.* at ¶¶ 8, 13, 20.)

Throughout Plaintiff's employment, Defendants added an eighteen percent (18%) service charge to all meals at the Restaurant. (*Id.* at ¶ 35-36.) Customers were informed of this charge through a notice on each menu, stating: "18% service charge added for all diners." (*Id.* at ¶ 36.) Receipts then stated that customers could provide their servers with an "additional tip" with options to leave five percent, seven percent, or nine percent of the sum of the subtotal, service charge, and sales tax. (*Id.* at ¶ 38.) Customers subsequently voiced complaints to servers, asking them to convey to Defendants that they did not know whether the "service charge" was being disbursed to their servers since they were being asked to provide "additional tips." (*Id.* at ¶ 39.)

In response to these complaints, in January 2023, Defendants specified on customer receipts that the "service charge" would "go[] to the house and the house [would] split[] amongst all service staff." (*Id.* at ¶ 40.) On or about June 1, 2023, Defendants held a meeting of service staff, including Plaintiff, where Defendants told servers to inform customers that the service charge was being split up and distributed among the service staff. (*Id.* at ¶ 40.) However, Defendants had not in fact been distributing any portion of the "service charges" to service staff – instead, the entirety of earnings from the charge were retained by Defendants. (*Id.* at ¶ 42.)

Following the notice to customers that the service charge was disbursed among service staff, staff noticed a decrease in tips. (*Id.* at ¶ 44-50.) The estimated total amount paid by all customers estimated to about $5,382.50 per day, and that the value of the service charges paid by all customers estimated to about $968.85 per day, which went entirely to Defendants. (*Id.* at ¶ 48.) Before the notice regarding service charge disbursement, from around August through December of 2022, Plaintiff estimates that each such service employee, including himself, was entitled to approximately $616.54 per day. (*Id.* at ¶ 49.) After the notice regarding service charge disbursement, from around January through June of 2023, Plaintiff estimates that each such service employee, including himself, was entitled to one tenth (1/10) of the service charges paid by customers, or approximately $581.31 per day. (*Id.* at ¶ 50.)

Defendants did not provide Plaintiff with a wage notice or wage statement[1] at any time throughout Plaintiff's employment. (*Id.* at ¶ 26-27.) Throughout Plaintiff's employment, his

---

[1] Under NYLL, employers are required to provide employee with a wage notice and wage statements. (*Id.* at ¶ 91, 97.) A wage notice is a "required notice given at the time of hiring that informs the employee of the following information in writing in English and the employee's primary language: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different;

schedule was fixed by Defendants, changing intermittently during his time as an employee. (*Id*. at ¶ 29-32.) From on or about August 1, 2022, or October 31, 2022, Plaintiff was paid a regular wage of $25.00 per hour. (*Id.* at ¶ 33.) Plaintiff received a wage increase on or about November 1, 2022 to $30.00 per hour. (*Id.* at ¶ 34.) Plaintiff received a final wage increase to $35.00 per hour on November 23, 2022, through the rest of his employment with Defendants. (*Id*. at ¶ 35.)

## II.   **Procedural History**

Plaintiff filed his Complaint against Defendants on July 21, 2023, alleging: (i) misappropriation of tips under the FLSA (Count I); (ii) misappropriations of tips under the NYLL (Count II); (iii) failure to furnish a wage notice under the NYLL (Count III); and (iv) failure to furnish wage statements under the NYLL, on behalf of himself and other similarly situated employees (Count IV). (ECF No. 1 at ¶ 77-100.)  Count I specifically alleges that by retaining the eighteen percent (18%) service charge that was represented it to customers as being distributed among employees, Defendants violated § 3(m)(2)(B) of the FLSA which provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." (*Id.* at ¶ 79-83.)

---

the telephone number of the employer; plus such other information as the commissioner deems material and necessary." (*Id.* at ¶ 91.) Wage statements are required statements that employers must provide to employees with every payment of wages that lists the following information: "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed a part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked." (*Id.* at ¶ 97.) Plaintiff alleges that his lack of wage notice or statements contributed to the misappropriation of tips. (*Id.* at ¶ 28, 52.)

4

Count II specifically alleges that by framing the service charge as a tip and retaining it rather than distributing it to employees, Defendants additionally violated NYLL § 198-d, which specifies that "[n]o employer… shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." (*Id.* at ¶ 84-89.) Count III alleges that Defendants never provided Plaintiff with a wage notice in direct violation of NYLL § 195.1(A), which contributed to the tip misappropriation that formed the basis of this lawsuit. (*Id.* at ¶ 92, 94.) Finally, Count IV alleges Defendants never provided Plaintiff with a wage statement in direct violation of NYLL § 195.3. (*Id.* at ¶ 97.)

Plaintiff alleges he is entitled to recover: (i) misappropriated tips, (ii) liquidated damages, (iii) prejudgment and post judgment interest, and/or (iv) reasonable attorneys' fees and costs from Defendants under the FLSA. (*Id.* at ¶ 2.) Plaintiff further alleges that he is entitled to recover: (i) misappropriated tips, (ii) liquidated damages, (iii) penalties for failure to provide a wage notice at time of hire, (iv) penalties for failure to provide wage statements with each payment of wages, (v) prejudgment and post judgment interest, and (vi) reasonable attorneys' fees and costs under the NYLL. (*Id.* at ¶ 3.)

On September 26, 2023, Defendants filed a motion for a pre-motion conference addressed to Judge Azrack, requesting leave to file a motion to dismiss Counts I, III, and IV of Plaintiff's Complaint. (ECF No. 16.) Plaintiff subsequently filed a motion for a pre motion conference requesting leave to file a motion for conditional collective class certification under the FLSA on October 6, 2023 (ECF No. 9), which was denied without prejudice by the undersigned on October 11, 2203. (*See* Electronic Order dated October 11, 2023.) On October 27, 2023, Judge Azrack waived the pre motion conference requirement with respect to

Defendants' anticipated motion to dismiss and set a briefing schedule for the motion. (*See* Electronic Order dated October 27, 2023.)

On January 5, 2024, Defendants filed a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss *all* Counts asserted against them in the Complaint. (ECF No. 23.) On January 10, 2024, upon request from the parties, the case was referred to mediation. (*See* ECF No. 28; Electronic Order dated January 11, 2024.) On April 9, 2024, the Court was informed that a settlement was not reached following the mediation. (ECF No. 30.) On April 17, 2024, Judge Azrack referred Defendants' Motion to Dismiss to the undersigned for a Report and Recommendation. (*See* Electronic Order dated April 17, 2024.) The parties appeared for an Oral Argument on Defendants' Motion to Dismiss before the undersigned on July 8, 2024. (ECF No. 33.)

### III.    **The Parties' Contentions**

#### A.    **Defendants' Motion to Dismiss**

In support of their Motion to Dismiss, Defendants argue: (i) Plaintiff's FLSA claim is defective as a matter of law as proceeds from mandatory service charges can be retained, and (ii) since Plaintiff's FLSA claim fails as a matter of law, the court should decline supplemental jurisdiction over Plaintiff's remaining state claims. (ECF No. 24 at 6-7.)

*First*, Defendants contend it was proper for them to retain the proceeds from the 18% service charge, as the FLSA allows employers to keep proceeds from mandatory service charges. (*Id.* at 4.) Defendants maintain that the FLSA clearly distinguishes tips from service charges which they claim this was. Specifically, the FLSA defines tips as voluntary payment, with the amount determined solely by the customer, and, by contrast, defines mandatory service charges as charges that are automatically applied to bills by a business. (*Id.*) Defendants argue that while the FLSA does not allow employers to retain tips, the FLSA does allow employers to retain

proceeds from mandatory service charges. (*Id.*) Defendants claim that since the eighteen percent service charge was automatically incurred by customers, it was a mandatory service charge rather than a tip, and, therefore, Plaintiff's Complaint fails under the FLSA and should be dismissed. (*Id.* at 6.)

*Second*, Defendants claim that since Plaintiff's Complaint fails under the FLSA, Plaintiff's other claims under the NYLL should be denied supplemental jurisdiction. *Id.* Defendants maintain that because Plaintiff's sole federal claim fails as a matter of law, the Court should deny supplemental jurisdiction over the Complaint in its entirety as Plaintiff's two remaining claims belong in state court. (*Id.* at 6-7.)

**B.    Plaintiff's Opposition**

In opposition to Defendants' Motion to Dismiss, Plaintiff argues that Defendants overlook Section 3(m) of FLSA, which was amended on March 23, 2018, to provide that "[a]n employer may not keep tips received by its employees for any purpose, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit" and that any employer violating this law will be liable for all tips and liquidated damages. (ECF No. 26 at 8) (citing 29 U.S.C. §203(m)(2)(B)).

Plaintiff contends the FLSA's definition of "compulsory charge for service" excludes section 3(m)(2)(B) by omission. (*Id.* at 9.)  Plaintiff maintains that the phrase "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip…" by its plain language only addresses the meaning of "tip" under sections 3(m)(2)(A) and 3(t). (*Id.* at 9.) This is supported by the fact that the Secretary of Labor expressly interpreted section 3(m)(2)(B) of the FLSA in amendments to

FLSA regulations in 2020.[2] (*Id.*) Plaintiff asserts that the FLSA only provides that a service charge must not be treated as a tip for the purposes of crediting the amount of the charge towards minimum wage. (*Id.* at 10.) Otherwise, Plaintiff concedes the FLSA – unlike the NYLL – does not address whether a compulsory service charge that is represented as a tip to be distributed to employees is a "tip" under section 3(m)(2)(B). (*Id.*)

Plaintiff further argues Defendants' service charge was not otherwise a "mandatory" charge because its calculation varied over time and the charge would change in response to customer complaints. (*Id.* at 11.) Although Defendants claimed that the 18% service charge would be "added to all diners" on the menu, Plaintiff identifies that Defendants claimed on that same menu that the service charge would be "split amongst all service staff," and, therefore, just because the 18% charge was on the menu did not mean that it was mandatorily applied to all meals. (*Id.*) Plaintiff claims that the addition of FLSA section 3(m)(2)(B) eliminated the Second Circuit's prior differentiated treatment of tips between the FLSA and NYLL as it, "restored the common aim" of the two laws and they should thus be construed in the same manner. (*Id.*) Plaintiff asserts that even if his federal claim was dismissed "at an early stage," it would still not be an abuse of discretion for this Court to retain supplemental jurisdiction over his state law claims. (*Id.* at 12.)

C.   **Defendants' Reply in Further Support**

In Reply, Defendants maintain that the Court should dismiss Plaintiff's Complaint in its entirety. (ECF No. 27 at 7.) *First*, Defendants claim that the FLSA is "clear and unambiguous"

---

[2] "Elsewhere in the December 30, 2020 amendments to the regulations, the Secretary expressly interpreted section 3(m)(2)(B) of the FLSA. *See* 85 F.R. 86789, 29 C.F.R. § 531.52(b) ("Section 3(m)(2)(B) of the Act provides that an employer may not keep tips received by its employees for any purposes, regardless of whether the employer takes a tip credit. (1) An employer may exert control over an employee's tips only to distribute tips to the employee who received them….")." (ECF No. 26 at 9-10.)

when it distinguishes a tip from a service charge: the FLSA explicitly states that a compulsory charge for service "is not a tip, and, even if distributed by the employer to its employees, cannot be counted as a tip." (*Id.* at 2.) Defendants further maintain that tips are distinguished from compulsory charges under the FLSA, as tips are voluntarily given with the amount solely chosen by the customer rather than the establishment, and Defendants' service charges are amounts chosen by them. (*Id.* at 3.)  Defendants claim that Plaintiff's argument that service charges are only treated differently when the proceeds of the service charge are used to satisfy the balance of the tip credit is in direct contradiction to the FLSA. (*Id.*) Defendants contend the FLSA allows employers to keep service charge proceeds and prohibits employers from keeping voluntary gratuities. (*Id.*) Defendants argue FLSA – as opposed to the NYLL – does not contemplate *how* the service charge was represented, and therefore Plaintiff's argument that Defendants' service charge was a tip because it was represented it as such is irrelevant. (*Id*. at 5.) In other words, the only factors that have been relevant to this analysis are whether the charge was compulsory or voluntary, and, therefore, in Defendants' view, their representation of the charge should not be considered. (*Id.*)

*Second*, Defendants argue that Plaintiff's argument that Defendants' service charge was not mandatory was contradicted by his own Complaint. (*Id.*) Defendants argue that Plaintiff states on several occasions in his Complaint that the "service charge" was added by Defendants to food orders, thus, even the "Plaintiff viewed the charge mandatory rather than voluntary." (*Id.*) Defendants further argue that Plaintiff's claim that FLSA section 3(m)(2)(B) eliminated the Second Circuit's prior differentiated treatment of tips between the FLSA and NYLL is also contradictory to the plain language of the statute. (*Id.* at 6.) Defendants claim that 29 U.S.C. § 3(m)(2)(B) states: "An employer may not keep tips received by its employees for any purposes,

including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit," thus the plain language of the statute is clearly referring to tips and does not govern service charges. (*Id.*)

*Third*, Defendants assert that the Court should decline the exercise of supplemental jurisdiction over Plaintiff's NYLL claims. (*Id.* at 7.) Defendants claim that if the Court dismisses the FLSA claim there is "no compelling reason" why the Court should retain jurisdiction over the NYLL claims, thus, Defendants recommend the Court dismiss the Complaint in its entirety. *Id.*

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  Thus, the Court assumes for purposes of this motion only, the truth of the allegations of the complaint.

"[T]he pleading standard Rule 8 announces . . . demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556–

57 (internal citations omitted)).

When considering a motion to dismiss, the Court assumes all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. *Id.*

## DISCUSSION

## I.  FLSA Claim

"The FLSA requires covered employers to pay employees a minimum wage of at least $7.25 per hour." *Tecocoatzi-Ortiz v. Just Salad LLC*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (S.D.N.Y. Feb. 25, 2022) (citing 29 U.S.C. § 206(a)(1)). "The FLSA's definition of 'wage' provides that, under certain circumstances, employers of 'tipped employees' may apply part of that employees' tips towards the minimum wage." *Id*. (internal citations omitted) ("The practice of crediting some of an employee's tips towards the minimum wage is commonly referred to as taking a 'tip credit' . . . [a]n employee has a cause of action arising out of an employer's failure to comply with FLSA tip credit requirements only if, without the tip credit, the employee's compensation would fall short of the minimum wage."). Specifically, with respect to "tipped workers," both the FLSA and NYLL provide:

> [A]n employer may pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage, and this allowance against the minimum cash wage is known as a 'tip credit.'  An employer may not take a tip credit unless (1) such employee has been informed by the employer of the tip credit provision; and (2) all tips received by such employee have been retained by the employee. This provision is strictly

construed. Under both the FLSA and the NYLL, the burden is on the employer to show
that they have complied with the tip credit requirements.

*Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 234 (S.D.N.Y. 2020), *report and
recommendation adopted sub nom. Villanueva v. 179 Third Ave. Rest. Inc.*, No.
16CV8782AJNRWL, 2021 WL 2139441 (S.D.N.Y. May 26, 2021) (internal citations omitted)
(cleaned up); *Maldonado v. BTB Events & Celebrations, Inc.*, 990 F. Supp. 2d 382, 386-87
(S.D.N.Y. 2013) ("*Maldonado*") ("[T]he FLSA and NYLL allow an employer to take a 'tip
credit' and thereby pay less than the minimum wage as base pay only where the employee keeps
the entirety of any gratuity left by the customer"); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788
F.Supp.2d 253, 287, 290 (S.D.N.Y.2011) (explaining the FLSA and NYLL require that an
employer allow employees to retain all tips as a precondition for taking a 'tip credit').

In 2018, Section 3(m) of the FLSA was amended to provide that "[a]n employer may not
keep tips received by its employees for any purposes, including allowing managers or
supervisors to keep any portion of employees' tips, regardless of whether or not the employer
takes a tip credit" and that "[a]ny employer who violates section 3(m)(2)(B) shall be liable to the
employee or employees affected in the amount of… all such tips unlawfully kept by the
employer, and in an additional amount as liquidated damages." 29 U.S.C. §§ 203(m)(2)(B),
216(b); *see also* 115 P.L. 141 § 1201.[3] As the FLSA "does not explicitly define 'tips' or 'service

---

[3] "As part of an omnibus spending bill, Congress adopted several amendments to the FLSA tip credit
provisions. The FLSA now provides that '[a]n employer may not keep tips received by its employees for
any purposes, including allowing managers or supervisors to keep any portion of employees' tips,
regardless of whether or not the employer takes a 'tip credit.'" *Benavidez v. Greenwich Hotel Ltd. P'ship*,
provided No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *12 (D. Conn. Mar. 15, 2019) (quoting 29
U.S.C. § 203(m)(2)(B) (effective Mar. 23, 2018). "Congress also has created what appears to be a new,
separate cause of action for the recovery of unpaid, or improperly withheld, tips—regardless of whether
the employer takes a tip credit." *Id*. (citing 29 U.S.C. § 216(b) (effective Mar. 23, 2018)). Section 216(b)
provides that "[a]ny employer who violates section 203(m)(2)(B) shall be liable to the employee or
employees affected in the amount of the sum of any tip credit taken by the employer and all such tips
unlawfully kept by the employer, and in an additional equal amount as liquidated damages. An action to

charges[,]' Department of Labor regulations have, accordingly, filled in [the] statutory gap."

*Benavidez*, No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *8. The regulations define a "tip" as follows:

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for the customer. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer. An employer that takes a tip credit against its minimum wage obligations is prohibited from using an employee's tips for any reason other than that which is statutorily permitted in section 3(m)(2)(A): As a credit against its minimum wage obligations to the employee, or in furtherance of a tip pool limited to employees who customarily and regularly receive tips.

> Only tips actually received by an employee as money belonging to the employee may be counted in determining whether the person is a "tipped employee" within the meaning of the [FLSA] and in applying the provisions of section 3(m)(2)(A) which govern wage credits for tips.

29 C.F.R. § 531.52(a). By contrast, the Department of Labor regulations define a service charge as:

> A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of sections 3(m)(2)(A) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.

> As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the [FLSA]. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the [FLSA].

---

recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (effective Mar. 23, 2018); *see also Tecocoatzi-Ortiz*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *6 (holding the 2018 Amendments to the FLSA did not impact Second Circuit authority evaluating whether a defendant illegally reduced or retained tips in violation of the FLSA).

29 C.F.R. § 531.55 (a)-(b).

To this end, under the FLSA, a service charge is a compulsory charge imposed by the employer, while a tip is a voluntary amount give in gratuity by a customer for service staff, and, although employers cannot retain any portion of their employees' tips, service charges are not considered to be tips, and employers can therefore keep all proceeds that come from said charge. *See id.*; 29 C.F.R. § 531.52(a); *see also Tecocoatzi-Ortiz*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *7 ("[U]nder the FLSA, a compulsory charge such as the delivery fee is not a tip."); *In re Domino's Pizza, Inc.,* No. 16-cv-6274, 2018 WL 1587593, at *3-4 (S.D.N.Y. Mar. 27, 2018) (holding a mandatory flat delivery fee is a "compulsory charge for service, which does not constitute a tip."); *Benavidez*, No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *9 (collecting cases) ("[W]here a service charge is mandatory, and is included in the employer's gross receipts, it is properly deemed a service charge, and not a tip, for purposes of the FLSA. Where, however, a customer retains discretion over its payment, it is a tip. [W]here a service charge has been used and the proceeds of the service charge are distributed to employees, the proceeds distributed to employees are counted as wages towards satisfying the employer's minimum wage obligations."); *Labriola v. Clinton Ent. Mgmt., LLC*, No. 15 C 4123, 2017 WL 1150989, at *11 (N.D. Ill. Mar. 28, 2017) (citing 29 C.F.R. §§ 531.50, 531.55) ("Service charges that are distributed from employers to employees are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage.").

Here, applying the regulations, Defendants' 18% service charge is not to be considered a tip under the FLSA because it is a compulsory charge added to each bill at the Restaurant, rather than a voluntarily chosen amount from a customer, and was added to the Restaurant's gross

receipts. *See* ECF No. 1 at ¶ 37. Indeed, Courts in this Circuit have consistently held that the Department of Labor regulations are explicit in distinguishing a service charge from a tip under the FLSA, and that service charges "are counted against an employer's minimum wage obligations under the FLSA, while tips are not; employers must still pay tipped employees a wage." *Labriola*, No. 15 C 4123, 2017 WL 1150989, at *11 (holding that where dance fees were "(1) collected by the Club as part of its gross receipts, (2) distributed to the dancers, and (3) mandatory, rather than discretionary, amounts, these fees are service charges, not tips[,] [and] therefore count against Defendant's minimum wage obligations."); *Tecocoatzi-Ortiz*, No. 18-CV-7342 (JGK), 2022 WL 596831, at *7 (rejecting plaintiffs' contentions that defendants illegally reduced or retained their tips in violation of the FLSA by instituting a delivery fee and not emitting any part of that fee to the plaintiffs and by deducting credit card processing fees from the plaintiffs' tips that were paid by credit card because "irrespective of who retained the fee, the plaintiffs' claims [were] foreclosed under the FLSA, [which provides] a compulsory charge such as the delivery fee is not a tip.").

That Defendants may have misrepresented the service charge as a tip to their customers is irrelevant to the analysis of whether Defendants illegally withheld tips in violation of the FLSA. *See Barenboim v. Starbucks Corp.*, 698 F.3d 104 (2d Cir. 2012), *certified question accepted*, 20 N.Y.3d 914, 980 N.E.2d 528 (2012), and *certified question answered*, 21 N.Y.3d 460, 995 N.E.2d 153 (2013) (under federal law, an employer may retain part of a compulsory charge that it purports to collect to compensate its employees and still claim a tip credit).[4] With respect to

---

[4] "Because the standards for determining whether a payment is a gratuity differ under the FLSA and the NYLL, the Court will analyze and apply these bodies of law separately." *Maldonado*, 990 F. Supp. 2d at 388 (citing *Barenboim.*, 698 F.3d at 112) (holding under New York law, an employer may not retain any part of a compulsory charge that it purports to collect to compensate its employees); *see infra* section II. A.

this point, *Maldonado* is illustrative. *Maldonado* "center[ed] on a mandatory charge that [defendants] imposed in connection with delivery orders placed over the phone. For those orders, [defendants] added a mandatory surcharge to customer invoices amounting to 11% of the total food and drink bill (the "11% surcharge"). However, [defendants] did not treat the 11% surcharge as a tip or gratuity owed to delivery personnel. [Rather, defendants] instead retained a portion of the 11% surcharge, and used it to pay various administrative costs and business expenses[,] distributed the remainder to delivery personnel, and credited that amount against the statutory minimum-wage obligations." *Maldonado*, 990 F. Supp. 2d at 383.

Defendants did not give customers a written explanation (on the invoices or otherwise) of the 11% surcharge, and specifically instructed delivery personnel not to discuss fees with customers. *Id*. at 386. As in the instant case, the *Maldonado* plaintiffs argued that the 11% surcharge was a "gratuity" (the relevant term under the FLSA) and a "charge purported to be a gratuity" (the relevant term under the NYLL), and that Defendants thus violated federal and state law in retaining part of that charge. *Id*. at 387. The Court ultimately held the surcharge imposed in connection with employer's catering deliveries was not a "tip" within the meaning of FLSA because the charge was non-negotiable, at no time was decision whether to pay surcharge voluntary for customers, and defendants, at all times, included surcharge in its gross receipts. *Id*. at 389. The Court rejected plaintiffs' argument that because the compulsory charge could have reasonably been understood to be a gratuity by customers, the FLSA therefore "prohibits an employer from misappropriating those charges from the employee[:]"

> In *Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048(GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007), the court engaged in an analysis similar to the one required under the NYLL, focused on how a customer would perceive a mandatory 15% service charge. The court held that that charge was a tip for FLSA purposes, because "customers would assume that the 15 percent amount referenced on the banquet bill was a tip." *Chan,* 2007 WL 313483, at *16. But *Chan* was decided years before the Second Circuit's 2012

decision in *Barenboim,* which resolved, contrary to the *Chan* court's mode of analysis, that "[t]ips under the FLSA ... do not include ... obligatory service charges," *Barenboim,* 698 F.3d at 112. This Court must heed such clear direction from the Circuit. The mandatory 11% surcharge was, therefore, not a tip within the meaning of the FLSA.

*Id.* at 389 (cleaned up).

Similarly, in *Benavidez*, the Court found that despite how the service charges were portrayed to customers, the service charge could not be considered a tip as a matter of law, because the service charges were mandatory, and thus, according to the definitions set forth in the FLSA, were not to be considered tips. *Benavidez*, No. 3:16-CV-191 (VAB), 2019 WL 1230357, at *16. The Court went as far to state that "whether employees or employers colloquially choose to call a service charge a tip is of no legal significance[:]"

> In the end, Plaintiffs have not produced any evidence to suggest that the service charges were actually tips—or that tips, rather than service charges, were necessary in order for Plaintiffs to make a minimum wage under the FLSA. One Plaintiff, Marvin Castaneda, submitted a declaration in opposition to summary judgment, asserting that "because the pool referred to in the CBA as the 'service charge pool' contains voluntary tips made by customers, we continue to refer to it as what it is, a 'tip pool.'" This is an unsupported legal conclusion. Plaintiffs have provided no support for the notion that service charges placed in a distribution fund alongside tips are converted into tips, particularly when the CBA itself provides that such funds are not to be allocated in the same manner.

*Id.* (cleaned up). Therefore, because "as Defendants argue, [their 18% percent] service charges, combined with the base hourly wages, bring Plaintiff's effective hourly wages above the federal minimum wage, then Defendants have met their federal minimum wage obligations." *Id.* at *17. Accordingly, because Plaintiff has failed to support his allegations that servers were paid less than minimum wage before *voluntary tips* were accounted for, the Court finds no minimum wage claim here and thus, no FLSA claim as a matter of law. *See id.* at *13 ("Indeed, [plaintiff] [has not] identif[ied] a single employee or pay period in which Defendants were unable to meet their minimum wage obligations through base hourly wages and service charges.").

## II.    NYLL Claims

Because the undersigned recommends denying Plaintiff's claim for FLSA liability based

on his failure to establish a minimum wage violation, the Court also recommends that it dismiss

the Complaint and decline to exercise jurisdiction over the NYLL claims.[5] *See e.g., Singh v.*

*Golam,* No. 19-CV-4687 (PKC) (LB), 2022 U.S. Dist. LEXIS 179520, at *18 (E.D.N.Y. Sept.

30, 2022) ("Generally, courts have found it appropriate to decline exercise of supplemental

jurisdiction over state law claims where all FLSA claims have been dismissed."); *Ayala v. Looks*

*Great Servs., Inc.,* 2015 U.S. Dist. LEXIS 96790, at *25 (E.D.N.Y. July 23, 2015) (dismissing

plaintiff's NYLL claims where FLSA claims lacked merit); *Fernandez v. Main Glatt Corp.,* No.

12- CV-986 (SJ) (VVP), 2014 U.S. Dist. LEXIS 44879, at *11 (E.D.N.Y. Mar. 14, 2014)

(declining to exercise jurisdiction over state claims and recommending that the motion be denied

and the complaint be dismissed with leave to replead in 30 days).

Nonetheless, in the event that Judge Azrack decides to exercise supplemental jurisdiction

over the state claims, the undersigned explores the merits of Plaintiff's NYLL claims.  *See Setty*

*v. Synergy Fitness,* No. 17-CV-06504 (NGG) (SMG), 2018 U.S. Dist. LEXIS 213878 (E.D.N.Y.

Dec. 18, 2018), *report and recommendation adopted,* 2019 U.S. Dist. LEXIS 47236 (E.D.N.Y.

---

[5] "Whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 is within the sound discretion of the district court. Courts consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity to decide whether to exercise supplemental jurisdiction. These factors counsel against hearing state law claims when the federal claims against a party are dismissed." *Tecocoatzi-Ortiz,* No. 18-CV-7342 (JGK), 2022 WL 596831, at *14 (internal citations omitted) (cleaned up). Here, "[a]ny concerns about judicial economy, convenience, and fairness are limited because this case is still at a relatively early stage of the litigation." *Id.* "Moreover, while there may be some overlap at a high level of generality between [plaintiff's] [federal] law claims on one hand and the remaining state law claims on the other, the proof that would support [each of] the claims is distinct." *Id*; *see infra*, Section II. A.

Mar. 20, 2019) (finding that plaintiffs failed to plead their FLSA and other claims but were able to establish NYLL coverage).  As previously mentioned, Plaintiff seeks to hold Defendants liable under the NYLL for misappropriation of tips, and Defendants' failure to provide a wage notice and wage statement.  *See generally*, ECF No. 1.

###   A.   Misappropriation of Tips

"New York's Labor Law is the state analogue to the federal FLSA."  *Santillan v. Henao,* 822 F.Supp.2d 284, 292 (E.D.N.Y.2011). However, "[o]n the question of whether a surcharge to the customer constitutes a gratuity, the NYLL takes a different approach—one far from the bright-line test applied under the FLSA." *Maldonado*, 990 F. Supp. 2d at 389. The applicable state law, NYLL § 196–d, provides in relevant part that "[n]o employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee." N.Y. Lab. Law § 196-d.

"The case law in New York has construed § 196–d to require a holistic assessment of how a reasonable customer would understand, in context, a particular surcharge, and whether it is 'purported to be a gratuity.'"  *Maldonado*, 990 F. Supp. 2d at 389 (collecting cases)[6] (quoting *Samiento v. World Yacht Inc.,* 883 N.E.2d 990 (N.Y. 2008) ("*World Yacht*"). Specifically, NYLL § 196-d "prohibits the withholding of mandatory charges 'when it is shown that

---

[6] "In March 2010, the NYSDOL, the agency charged with administering the NYLL, issued an illustrative but non-exhaustive list of factors that bear on whether a reasonable customer would believe a particular service charge is a gratuity. These included: (1) the font size and prominence of the notice; (2) the label used to denote the charge and whether such a label would confuse patrons (noting that the label "administrative fee" is clearer than "service charge"); (3) whether the purpose the charge and manner in which the charge is calculated are described on the bill; (4) whether the notice discloses the portion of the charge that is being distributed to the service staff and informs that patrons to leave an additional payment as a tip; and (5) whether there exists a separate line for gratuity." *Maldonado*, 990 F. Supp. 2d at 389–91. "Under New York law, the NYSDOL's interpretation of NYLL § 196–d is entitled to deference." *Id.* at 391.

employers represented or allowed their customers to believe that the charges were in fact gratuities for their employees.'" *Belizaire v. Ahold U.S.A., Inc.,* 796 F. App'x 51, 52 (2d Cir. 2020) (quoting *World Yacht.,* 883 N.E.2d at 990). "The standard under which a mandatory charge or fee is purported to be a gratuity should be weighed against the expectation of the reasonable customer." *Id.* Relevant here, in 2011, a new NYLL regulation was instituted that created a "rebuttable presumption" that any charge made in addition to charges for food, beverage and specified other materials or services "is a charge purported to be a gratuity." *Maldonado*, 990 F.Supp.2d at 393. To this end, when a restaurant imposes an administrative charge, it must be "clearly identified as such and customers shall be notified that the charge is not a gratuity or tip" and "[t]he employer has the burden of demonstrating, by clear and convincing evidence, that the notification was sufficient to ensure that a reasonable customer would understand that such charge was not purported to be a gratuity." *Id.* "With these considerations in mind, the Court considers whether the [18%] surcharge was a charge purported to be a gratuity for an employee within the meaning of § 196–d." *Id.* at 391.

Here, the undersigned finds Plaintiff adequately demonstrated that a "reasonable customer" at Defendants' Restaurant "would have would have plausibly understood the [service charge] to be a gratuity[,]" in light of the way that Defendant portrayed the charge *and* customers' changes in tip practice as a result of Defendants' conduct. *Belizaire*, 796 F. App'x at 52. *First*, Defendants made misrepresentations to diners on customer receipts that the "service charge" would "go[] to the house and the house [would] split[] amongst all service staff." *See* ECF No. 1 at ¶ 40. *Second*, Defendants held a meeting of service staff, including Plaintiff, where Defendants told servers to inform customers that the service charge was being split up and distributed among the service staff – however, Defendants had not in fact been distributing any

portion of the "service charges" to service staff – instead, the entirety of earnings from the charge were retained by Defendants. *Id.* at ¶ 42. *Finally,* following the notice to customers that the service charge was disbursed among service staff, staff noticed a decrease in tips. *Id.* at ¶ 44-50. With respect to this point, *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253 (S.D.N.Y. 2011) is illustrative. In *Copantitla*, the Court found a restaurant violated NYLL when it retained a quarter of the service charge, despite stating on the menu that the service charge was on the bill to "accommodate service staff[,]" because the restaurant had purported the charge as going completely to employees and reasonable customers believed this to be true; as demonstrated by the fact that customers did not inquire into the service charge any further and would only give additional gratuity on rare occasions for exceptional service. *Id*. at 286-87.

In the instant case, Defendants did not retain just a portion of the charge purported to go only to employees, but they retained *all* of the proceeds from the charge. *See* ECF No. 1 at ¶ 42. As in *Copantitla*, reasonable customers would have believed that the service charge was going to staff, as demonstrated by the fact that customers tipped less after Defendant clarified that the service charge would "go[] to the house and the house [would] split[] amongst all service staff." *Id*. at ¶ 40, 49-50. Ultimately, Defendants failed to overcome the rebuttable presumption that any charge made in addition to charges to food or beverages are charges purported to be gratuities. *See e.g., Maldonado*, 990 F.Supp.2d at 392 (holding defendants failed to clearly identify to customers that their service charge was not a tip where charge was listed on customer receipts as a "processing charge"); *Cf. Belizaire.*, 796 F. App'x at 52 (finding plaintiffs failed to plead that a reasonable customer would have plausibly understood defendants' delivery fee to be a gratuity where the "Complaint did not allege that Defendants ever represented to customers that the delivery fee was a gratuity for their employees" nor "allowed their customers to believe that it

was").[7] Thus, because Defendants' 18% service charge could reasonably be construed by customers as a tip, the undersigned finds Defendants could be considered to have misappropriated a tip in violation of the NYLL by retaining said charge. *See Barenboim*, 698 F.3d at 112 ("[U]nder New York law, an employer may not retain any part of a compulsory charge that it purports to collect to compensate its employees, while under federal law, the same employer may retain portions of that charge and still claim a tip credit. Because, as this example illustrates, § 196–d and the FLSA do not overlap fully in their text and interpretation, we cannot readily dismiss [plaintiff's] argument by reference to the FLSA.").

### B. Failure to Provide Wage Notice

The Court additionally finds Defendants violated Section 195.1(a) of the NYLL in failing to provide Plaintiff with a wage notice throughout the course of his employment. Section 195.1(a) of the NYLL specifically provides:

> Every employer shall provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

Section 198, Subsection 1-b of the NYLL additionally provides:

---

[7] "As the district court explained, a section of [defendants'] website titled 'Service Fees and Tipping' clearly distinguished [defendants] various mandatory service fees—including the delivery fee—from tips, explicitly stating that 'Tipping is optional. It is not expected but always appreciated.' Moreover, the structure of the delivery fee itself would not lead a reasonable customer to understand it to be a gratuity. The delivery fee associated with the minimum order size of $60 was $9.95, but if a customer ordered $100 or more, the fee dropped to $6.95. A reasonable customer would not perceive that a mandatory fee that *decreases* with the value of goods purchased was a tip." *Id*.

> If any employee is not provided within ten business days of his or her first day of employment a notice as required… he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees. The court may also award other relief, including injunctive or declaratory relief, that the court in its discretion deems necessary and appropriate.

Here, Defendants do not dispute Plaintiff's allegations that Defendants failed to provide Plaintiff with a wage notice containing the required employment information at any time throughout Plaintiff's employment in violation of Section 195.1(a), and, therefore, Plaintiff is entitled to $50 for each day that violations continued to occur up to $5,000 with costs and reasonable attorney's fees. *See* ECF No. 1 at ¶ 26-27; ECF Nos. 24, 27; *see also De la Cruz Casarrubias v. Surf Ave Wine & Liquor Inc.*, No. 20CV3003AMDRLM, 2021 WL 2223275, at *9 (E.D.N.Y. June 2, 2021) (holding where plaintiff, a former employee of the defendant, never received a proper wage notice, he was entitled to "$50 per workday after February 27, 2015 [his start-date], up to $5,000 for failure to provide a wage notice."); *Nam v. Ichiba Inc.*, No. 19-CV-1222(KAM), 2021 WL 878743, at *7 (E.D.N.Y. Mar. 9, 2021) (holding defendants liable under the NYLL for failure to provide wage notice to plaintiffs where "[i]t [was] undisputed that plaintiffs did not receive written notice of wage information when they were hired, nor did they receive their rate or manner of pay during their employment" and finding one plaintiff was entitled to $4,350.00 ($50 x 87) for his 87 days worked).

## C.    <u>Failure to Provide Wage Statement</u>

*Finally*, the Court finds Defendants violated Section 195.3 of the NYLL by never providing Plaintiff with a wage statement throughout the course of his employment. Section 195.3 of the NYLL explicitly requires employers to provide a "a statement with every payment of wages," that includes the following information:

23

The dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked[;] and the number of overtime hours worked.

Under Section 195.3, employees are entitled to "$250 per workday for each workday after February 27, 2015, up to $5,000 for [an employer's] failure to provide a wage statement." *Montanes v. Avanti Pizza 2 Inc.*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *5 (E.D.N.Y. Oct. 20, 2022).

Again, it remains undisputed that Defendants failed to provide Plaintiff with a wage statement containing the required employment information at any time throughout Plaintiff's employment in violation of Section 195.3, and, therefore, Plaintiff is entitled to $250 for each day worked without a proper wage statement – up to $5,000.00. *See* ECF No. 1 at ¶ 26-27; ECF Nos. 24, 27; *see also Montanes*, No. 21-CV-586 (ERK), 2022 WL 17820103, at *5 (holding plaintiff, a former employee of defendant, an Italian restaurant, was entitled to $250 for each workday he had worked up to $5,000 since he had been employed there for over 100 days and never received a proper wage statement); *Condado v. P&C Pagels, Inc.*, No. 22CV01589NRMPK, 2023 WL 7686701, at *10 (E.D.N.Y. Sept. 27, 2023) (holding plaintiff, a former employee of the defendant, a New York City bagel shop, was entitled to the maximum damages ($5,000) as she worked for defendant for over 100 days and never received a wage statement); *Nam*, No. 19-CV-1222(KAM), 2021 WL 878743, at *7 (holding defendants liable under the NYLL for failure to provide wage statements to plaintiffs where it was undisputed that defendants did not provide plaintiffs with their wage statements).

## CONCLUSION

Accordingly, for the reasons set forth above, the Court respectfully recommends that Defendants' Motion to Dismiss (ECF No. 23) be **GRANTED**, as Plaintiff has failed to state a claim for misappropriation of tips under the FLSA and that the Court should decline to exercise supplemental jurisdiction over the state law claims.  In the event the Court determines to exercise supplemental jurisdiction over the state law claims, those claims adequately state claims under state law and the motion to dismiss as to those should be denied. To the extent the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, those should be dismissed without prejudice.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals.  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any

further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan &*

*Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:        Central Islip, New York
              July 9, 2024

                                                    **S O   O R D E R E D**

                                              /S/ *James M. Wicks*

                                                    JAMES M. WICKS
                                              United States Magistrate Judge